UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

CALVIN HARRIOTT and ROSAMOND HARRIOTT,

                               Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC and
WILMINGTON TRUST CORPORATION,
OWNED SUBSIDIARY OF WILMINGTON
TRUST NATIONAL ASSOCIATION,

                               Defendants.

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**
17-CV-4748 (MKB) (VMS)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiffs Calvin Harriott and Rosamond Harriott, proceeding *pro se*, commenced the above-captioned action on August 14, 2017, against Defendants Nationstar Mortgage LLC ("Nationstar") and Wilmington Trust Corporation, owned subsidiary of Wilmington Trust National Association ("Wilmington Trust"), alleging violations of the Truth in Lending Act, 15 U.S.C. §§ 1601-1667e ("TILA"), and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* ("Exchange Act"). (Compl., Docket Entry No. 1.) On January 31, 2018, Defendants moved to dismiss Plaintiffs' claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Defs. Mot. to Dismiss ("Defs. Mot."), Docket Entry No. 10; Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 10-1.) On April 6, 2018, the Court referred Defendants' motion to Magistrate Judge Vera M. Scanlon for a report and recommendation. (Order dated April 6, 2018.)

      By report and recommendation dated August 17, 2018, Judge Scanlon recommended that the Court grant Defendants' motion and dismiss Plaintiffs' claims (the "R&R"). (R&R 29,

Docket Entry No. 34.) On August 29, 2018, Plaintiffs filed objections to the R&R. (Pls. Obj. to R&R ("Pls. Obj."), Docket Entry No. 35.) For the reasons discussed below, the Court adopts the R&R and grants Defendants' motion to dismiss Plaintiffs' claims with prejudice.

I. Background

The facts alleged in the Complaint are assumed to be true for the purpose of deciding Defendants' motion.

   a. **Prior state court foreclosure action**

Plaintiffs were the owners of real property located at 1001 East 85th Street, Brooklyn, New York 11236 (the "Property").[1] (Compl. ¶ 8.) On April 22, 2005, Plaintiff Calvin Harriott executed a note (the "Note") promising to repay $504,000 to non-party Wall Street Mortgage Bankers LTD DBA Power Express ("Power Express"). (Compl. ¶¶ 8, 13; s*ee generally* Note.) To secure his obligations under the Note, Calvin Harriott executed a mortgage (the "Mortgage") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Power

---

[1] Judge Scanlon deemed the following documents incorporated by reference into the Complaint or integral to the Complaint: (1) a promissory note executed by Calvin Harriott on April 22, 2005 (the "Note"), (Note, annexed to Decl. of Laurence P. Chirch ("Chirch Decl.") as Ex. A, Docket Entry No. 10-3); (2) a mortgage executed by Calvin Harriott on April 22, 2005 ("Mortgage"), (Mortgage, annexed to Chirch Decl. as Ex. B, Docket Entry No. 10-3); (3) an assignment of the Mortgage to Aurora Bank FSB ("Aurora"), dated November 16, 2011 ("Aurora Assignment"), (Aurora Assignment, annexed to Chirch Decl. as Ex. C, Docket Entry No. 10-3); (4) an assignment of the Mortgage from Aurora to Nationstar, dated October 2, 2012 ("Nationstar Assignment"), (Nationstar Assignment, annexed to Chirch Decl. as Ex. D, Docket Entry No. 10-3). (R&R 2–3.) Judge Scanlon also took judicial notice of records relating to the foreclosure action in New York Supreme Court, Kings County, captioned *Nationstar Mortgage LLC v. Calvin Harriot a/k/a Calvin Harriott, et al.*, Index No. 508172/2013 ("Foreclosure Action"). (*Id.* at 3.) Plaintiffs do not object to the consideration of these documents. The Court has reviewed Judge Scanlon's decision to consider these documents for clear error and finds none.

Express, on the same day.[2] (Compl. ¶¶ 8, 13; *see generally* Mortgage.) The Note and Mortgage were freely assignable. (*See* Note ¶ 1; Mortgage ¶ 20.) MERS assigned the Mortgage to Aurora on November 16, 2011, and Aurora assigned it to Nationstar on October 2, 2012. (*See* Aurora Assignment; Nationstar Assignment.)

On or about December 20, 2013, Nationstar commenced the Foreclosure Action against Plaintiffs in Kings County Supreme Court, asserting that Calvin Harriott had defaulted on the loan and that the entire principal balance of $504,000, as well as interest, was due and owing.[3] (*See* Foreclosure Compl., annexed to Chirch Decl. as Ex. F, Docket Entry No. 10-3.) On January 22, 2014, Plaintiffs filed an answer in the Foreclosure Action, without counsel, (*see* Foreclosure Action Answer and Amended Answer, annexed to Chirch Decl. as Ex. G, Docket Entry No. 10-3), and filed an amended answer, through counsel, on February 4, 2014, (*see id*). Plaintiffs asserted several affirmative defenses in their amended answer — including that Nationstar lacked standing — and sought cancellation of the Note and Mortgage, or, in the alternative, modification of the Note and Mortgage such that all interest, penalties and late fees incurred from the date of default would be waived. (*See id*.)

On March 23, 2016, after Nationstar moved for summary judgment and Plaintiffs opposed the motion, the state court issued an order granting summary judgment in favor of Nationstar, rejecting Plaintiffs' defense that Nationstar lacked standing, and referring the action to a referee to compute the amount due to Nationstar as a result of the default on the Mortgage

---

[2] Rosamond Harriot was not a signatory to the Note or Mortgage. (*See* Note 4; Mortgage.)

[3] Nationstar brought the Foreclosure Action against Calvin Harriott as the obligor, Rosamond Harriott as co-owner and resident of the Property, as well as Power Express and John Does 1–10, who had or may have claimed to have an interest in or lien upon the Property. (*See generally* Foreclosure Compl. 46–49, Docket Entry No. 10-3.)

and Note (the "Summary Judgment Order"). (*See* Summary Judgment Order, annexed to Chirch Decl. as Ex. H, Docket Entry No. 10-3.)

On November 4, 2016, Nationstar moved for judgment of foreclosure and sale ("Motion for JFS"). (*See* Mot. for JFS, Foreclosure Action, Index No. 508172/2013, NYSCEF Doc. No. 55.) Plaintiffs filed an opposition to the Motion for JFS together with a cross-motion to vacate the Summary Judgment Order ("Cross-Motion to Vacate"), arguing again that Nationstar did not have standing due to the invalid initial assignment from MERS. (*See* Cross-Mot. to Vacate, Foreclosure Action, Index No. 508172/2013, NYSCEF Doc. No. 69.) Plaintiffs also argued in their Cross-Motion to Vacate that Nationstar lacked standing for the additional reason that, subsequent to the commencement of the Foreclosure Action, Nationstar re-assigned the Mortgage and no longer had an interest in the Property. *Id*.

On June 6, 2017, the state court granted Nationstar's Motion for JFS and denied Plaintiffs' Cross Motion to Vacate ("Order Denying First Motion to Vacate"). (*See* Order Denying First Mot. to Vacate, Foreclosure Action, Index No. 508172/2013, NYSCEF Doc. No. 89.) The state court issued a judgment providing for the Property to be sold at auction (the "Foreclosure Judgment"). (*See generally* Foreclosure Judgment, annexed to Chirch Decl. as Ex. I, Docket Entry No. 10-3.) The Foreclosure Judgment specified that Plaintiffs are "forever barred and foreclosed of all right, claim, lien, title, interest, and equity redemption in the [Property]." (*Id*. 89.)

On July 4, 2017, Plaintiffs moved to vacate the Foreclosure Judgment ("Second Motion to Vacate"), arguing that Wilmington Trust "was identified as the party asserting to be the owner and holder of the note for the [Property]," and, therefore, Nationstar lacked standing to foreclose as it did not have an enforceable security interest. (*See* Second Mot. to Vacate, Foreclosure

Action, Index No. 508172/2013, NYSCEF Doc. Nos. 93-95.) On November 1, 2017, the state court denied Plaintiffs' motion ("Order Denying Second Motion to Vacate"). (*See* Order Denying Second Mot. to Vacate, Foreclosure Action, Index No. 508172/2013, NYSCEF Doc. No. 119.)

### b. Rescission notices and instant federal action

On June 13, 2017, Plaintiffs mailed a "Notice Demand to Rescind and Cancel Mortgage Loan" (the "Rescission Notice") to each Defendant. (Compl. ¶ 11.) The Rescission Notice states, *inter alia*, that "[o]n the day of the loan origination when the promissory note was signed, it was impossible for the contract to be consummated for lack of full disclosure. The actual lender was not known or identified. [Power Express] failed to disclose this discovery on April 22, 2005." (*Id*. at 21.)[4] The Rescission Notice further states: "This is a notice demand that I hereby immediately rescind and cancel the above mortgage loan . . . serviced by Nationstar Mortgage, LLC." (*Id*. at 21–24.) Under the heading "Urgent Concerns," the Rescission Notice reads:

> **In direct violations pursuant to N.Y. Real Prop. Acts. Law § 1303 1302, Nationstar Mortgage, LLC asserts to be the "Holder and Owner of the Note" with enforceable security interest to foreclose on the [Property].**
>
> On August 18th, 2016 **Wilmington Trust Company / Wilmington Trust, National Association** was <u>identified as the party asserting to be the owner and holder of the note</u> for the [Property].
>
> Every residential mortgage foreclosure case in New York requires

---

[4] Plaintiffs attached a copy of the Rescission Notice to the Complaint. (Compl. 21–24.) As a result, the Court may properly consider the Rescission Notice. *See Wilson v. Kellogg Co.*, 628 F. App'x 59, 60 (2d Cir. 2016) ("In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).

5

> that the plaintiff must own the mortgage and hold the note.
>
> **The servicer is [k]nown as Nationstar Mortgage, LLC** and Nationstar Mortgage, LLC is not the owner or holder and <u>lacks standing to foreclose</u> in their name, any action to foreclose must be filed in the name of the exact Entity which owns the mortgage and note.
>
> Any mortgage foreclosure in the name of **Nationstar Mortgage, LLC** would be lacking of subject matter jurisdiction, to enforce security interest.

(*Id*. 23 (emphasis in original).)

On August 14, 2017, Plaintiffs filed the Complaint in this action, alleging that Defendants "failed to cancel the security interest in the [P]roperty" within twenty days of receipt of the Rescission Notice, as required by TILA, and are therefore "now in default." (*Id*. ¶ 12.) Plaintiffs sent the Rescission Notice to Defendants because of the alleged violations of the disclosure requirements found in TILA and its implementing regulations. (*Id*. ¶¶ 12–13, 15, 17, 20, 23–24.) Plaintiffs allege that non-party Power Express failed to disclose the identity of the actual lender during the origination of the Note and Mortgage. (*Id*. ¶ 16.) Plaintiffs also appear to allege that the Note extended beyond nine months and was a concealed security instrument, citing "The Truth in Lending Act (TILA), 15 U.S.C. § 78c Section 10."[5] (*See* Compl. ¶¶ 1, 18.)

Plaintiffs invoke section 1635(b) of TILA, which provides that when an obligor exercises his right of rescission, "he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission." This provision further states that "[w]ithin 20 days of receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money,

---

[5] Plaintiffs' reference to "15 U.S.C. § 78c Section 10" appears to be an attempt to invoke Section 3(a)(10) of the Exchange Act, which defines the term "security." *See* 15 U.S.C. § 78c(a)(10) ("Definitions and Application").

downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b).

Plaintiffs seek rescission of the Note and Mortgage, which would void the security interest in the Property, discharge of Plaintiffs' liability for any further financial obligations under the loan, recovery of the money already paid under the Note, and additional damages under section 1640, TILA's civil liability provision. (*See* Compl. ¶ 3, 22, Prayer for Relief (E).)

### c. Judge Scanlon's recommendation

Judge Scanlon recommended that the Court dismiss Plaintiffs' claims without leave to amend for three reasons. (*See* R&R.) First, Judge Scanlon concluded that the *Rooker-Feldman* doctrine bars all of Plaintiffs' claims except Plaintiffs' claim for monetary damages under section 1640. (*Id*. at 10–14.) Judge Scanlon found that the majority of Plaintiffs' claims are, in substance, an appeal from a state court judgment and therefore barred, because Plaintiffs (1) lost the Foreclosure Action in state court, (2) complain of injuries resulting from that judgment, (3) invite the Court to review the state court determinations, and (4) the state court rendered its judgment before the present action. (*Id*.)

Second, Judge Scanlon found that the doctrines of claim preclusion (*res judicata*) and issue preclusion (collateral estoppel) bar all of Plaintiffs' claims. (*Id*. at 15–25.) Judge Scanlon found that Plaintiffs' claims against Nationstar are barred by claim preclusion, because Nationstar was a party to the Foreclosure Action and "all claims in this action were raised (and if not, certainly could have been raised) in the Foreclosure Action." (*Id*. at 15–19.) Judge Scanlon found that the doctrine of issue preclusion requires dismissal of the claims against both Defendants because "each issue raised in the federal action was placed in issue, and decided, in the Foreclosure Action," and Plaintiffs had a full and fair opportunity to litigate the issues. (*Id*.

at 18–25.)

Finally, Judge Scanlon concluded that "[e]ven if the court had subject matter jurisdiction and the claims were not precluded, Plaintiffs' TILA claims would be time-barred." (*Id.* at 26–25.) Judge Scanlon rejected Plaintiffs' argument that the Court should equitably toll their claims because "Plaintiffs' vague and conclusory allegations fail to provide any plausible basis to support equitable tolling." (*Id*. at 27.)

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding "general objection[s] [to be] insufficient to obtain *de novo* review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file *specific* written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Colvin v. Berryhill*, --- F. App'x ---, ---, 2018 WL 2277791, at *1 (2d Cir. May

8

18, 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

### ii. Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)); *see also Chau v. S.E.C.*, 665 F. App'x 67, 70 (2d Cir. 2016). The plaintiff has the burden to prove that subject matter jurisdiction exists, and in evaluating whether the plaintiff has met that burden, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010). A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists. *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).

### iii. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*,

884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### b. Plaintiffs' objections to the R&R

Plaintiffs object to Judge Scanlon's recommendations to dismiss all claims against Defendants. (*See* Pls. Obj.)

Plaintiffs' objections are conclusory and general. The Court understands Plaintiffs to raise the following limited objections to Judge Scanlon's findings in the R&R. First, that their "claims would not be barred by res judicata and collateral estoppel" and that those "doctrines do[] not apply." (*Id*. at 5.) Second, that they do "not seek the subject matter jurisdiction of this court to settle issues in a Foreclosure Action that would be barred by *Rooker-Feldman Doctrine* . . . [n]or . . . to settle issues on the Judgment of Foreclosure and Sale." (*Id*. at 6.) Third, that "[e]quitable [t]olling shall be applied to effectuate the congressional intent of TILA." (*Id*. at 8.) In addition, although Judge Scanlon did not address the merits of Plaintiffs' claims, Plaintiffs

argue that "[m]aterial facts and issues exists surrounding did Defendants as individual entities violate TILA involving contract fraud and misrepresentation of a material fact made in formation of the mortgage loan contract."[6] (*Id.* at 6.)

Because Plaintiffs have made only conclusory and general objections to Judge Scanlon's findings that the *Rooker-Feldman* doctrine and claim and issue preclusion bar their claims, the Court reviews Judge Scanlon's findings for clear error. *See Benitez*, 654 F. App'x at 503–04.

### c. Most of Plaintiffs' claims are barred by the *Rooker–Feldman* doctrine

In *Rooker v. Fidelity Trust Company*, 263 U.S. 413, 415–16 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486–87 (1983), the Supreme Court held that federal district courts lack subject matter jurisdiction over disputes where a plaintiff essentially seeks review of a state-court decision. *Feldman*, 460 U.S. at 482 ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings."); *Rooker*, 263 U.S. at 416 (holding that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors"); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005) (holding that *Rooker–Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"); *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) ("Under the *Rooker–Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to

---

[6] The Court does not consider objections pertaining to issues that were neither reached nor decided by Judge Scanlon, including the merits of Plaintiffs' claims. (*See* Pl. Obj. 6–9 (concerning Plaintiffs' allegations of fraud under TILA and improper joinder of Rosamond Harriot as a party to the Foreclosure Action).)

11

appeals of state court judgments." (citing *Exxon Mobil Corp.*, 544 U.S. at 284)). "Underlying the *Rooker–Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005); *Vossbrinck*, 773 F.3d at 426 ("The doctrine is rooted in the principle that appellate jurisdiction to reverse or modify a state-court judgment is lodged exclusively in the Supreme Court." (alteration, citation and internal quotation marks omitted)).

In order for the *Rooker–Feldman* doctrine to apply, the following four-part test must be satisfied: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state[-]court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Vosbrinck*, 773 F.3d at 426 (alterations and internal quotation marks omitted) (quoting *Hoblock*, 422 F.3d at 85); *see also McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) (outlining the *Rooker–Feldman* test).

The Court finds that most of Plaintiff's claims are barred by the *Rooker-Feldman* doctrine and the Court is therefore without jurisdiction to adjudicate them. As to the first and fourth factors of the *Rooker-Feldman* test, Plaintiffs do not dispute that they lost the Foreclosure Action in state court on June 6, 2017, prior to commencing this action. (*See* Order Denying First Mot. to Vacate.) With respect to the second factor, Plaintiffs complain of injuries caused by the Foreclosure Action, including the loss of the Property and Defendants' enforcement of the Mortgage. (*See* Compl.)

Considering the third *Rooker-Feldman* factor, most of Plaintiffs' claims also invite review and rejection of the state court's findings. In their Complaint, Plaintiffs seek rescission of

the Note and Mortgage, cancellation of the security interest, return of payments made on the loan, release of all obligations under the loan, and injunctive relief enjoining Defendants from enforcing any security interest in the Property and declaring that Defendants violated TILA by failing to rescind the Note and Mortgage. (*See* Compl. ¶¶ 9–10.) In these requests for relief, Plaintiffs in effect seek the Court's review and rejection of the state court's findings that Plaintiffs are "forever barred and foreclosed of all right, claim, lien, title, interest, and equity redemption in the [Property]," (*see* Foreclosure Judgment), and that Nationstar had standing to enforce its security interest in the Property and to recover the amount due on the Note, (*see* Summary Judgment Order). The requested relief necessarily invites review and rejection of the findings in the Foreclosure Action. *See Vossbrinck*, 773 F.3d at 427 ("To the extent [the plaintiff] asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker–Feldman* bars [his] claim."); *Wilson v. HSBC Bank, USA*, No. 16-CV-8405, 2018 WL 1449204, at *5 (S.D.N.Y. Mar. 22, 2018) ("Plaintiff's claims seeking declaratory judgment, a temporary restraining order and preliminary injunction, . . . and rescission of note and deed of trust under TILA, clearly invite this Court to review and reject the state court judgment, and all complain of injuries caused by the state court foreclosure judgment, and are, thus, barred by the *Rooker–Feldman* doctrine.").

However, Plaintiffs' section 1640 claims for monetary damages do not require the Court to review the state court's Foreclosure Judgment, as they seek separate damages for fraud. *See Vossbrinck*, 773 F.3d at 427; *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) ("The *Rooker–Feldman* doctrine does not prevent a district court from reviewing a claim for damages stemming from an allegedly fraudulent foreclosure judgment, because the district court can determine damages liability without reviewing the propriety of the state court

13

judgment."). As a result, the *Rooker-Feldman* doctrine bars all of Plaintiffs' claims, with the exception of Plaintiffs' section 1640 claims for monetary damages.

### d. Plaintiffs' claims are barred by claim and issue preclusion

To the extent that the Court has jurisdiction over Plaintiffs' claims, the claims are all precluded by either claim or issue preclusion. *See Thompson v. Cnty. of Franklin,* 15 F.3d 245, 253 (2d Cir. 1994) ("*Res judicata* challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)."); *Vassel v. Greystone Bank*, No. 12-CV-5704, 2013 WL 2395980, at *6 (E.D.N.Y. May 31, 2013) ("In addition, a party may seek dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) based on the doctrines of collateral estoppel/issue preclusion and res judicata/claim preclusion.").

#### i. Plaintiffs' claims against Defendants are precluded

"Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the [s]tate from which the judgments emerged would do so . . . ." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). Federal courts sitting in New York apply New York law to determine whether claims are barred by claim and issue preclusion. *See Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 191 (2d Cir. 2012) ("[I]n order to determine the preclusive effect of a state-court decision, a federal court must look to the law of that state and should not give the state-court decision any greater preclusive effect than the courts of that state would give it.").

##### 1. Claim preclusion

"The doctrine of res judictata, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150,

157 (2d Cir. 2017); *Proctor v. LeClaire*, 715 F.3d 401, 411 (2d Cir. 2013) (citing *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996)). Under New York law, a defendant invoking claim preclusion must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been raised, in the prior action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (alterations and citation omitted); *see also Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (finding claim preclusion bars an action if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been raised in the prior action."). A claim was or could have been raised in a prior action if the claim "aris[es] out of the same transaction or series of transactions" involved in the prior action. *Hameed v. Aldana*, 296 F. App'x 154, 155 (2d Cir. 2008) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)); *see also Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (explaining that New York's approach provides that a later claim could have been raised in a prior action if it "aris[es] out of the same factual grouping as [the] earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief").

      Plaintiffs' claims against Nationstar are barred by claim preclusion. First, Plaintiffs do not deny that the state court issued an adjudication on the merits in the Foreclosure Action either when the state court granted Nationstar's motion for summary judgement, (*see* Summary Judgment Order), or when the state court granted Nationstar's subsequent motion for JFS, (*see* Foreclosure Judgment). Either of these orders operates as a final adjudication on the merits for claim preclusion purposes. *See, e.g., Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 421

15

(S.D.N.Y. 2008) ("It is long settled in this [c]ourt and in New York State courts that a summary judgment dismissal is considered a decision on the merits for *res judicata* purposes."); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171 (E.D.N.Y. 2010) (noting that an "earlier state court action, which include[s] a [f]inal [j]udgment of [f]oreclosure and [s]ale, [i]s a previous adjudication on the merits" in satisfaction of the first claim preclusion requirement).

Second, because Nationstar, a Defendant here, was the plaintiff in the Foreclosure Action against Plaintiffs, (*see* Foreclosure Compl.), "the previous action involved the same adverse parties," *see Marcel Fashions Grp., Inc.*, 779 F.3d at 108.

As to the third factor, Plaintiffs do not deny that the claims were, or could have been, raised in the Foreclosure Action. In challenging whether Nationstar had the right to enforce the Mortgage in the Foreclosure Action, Plaintiffs questioned whether Nationstar had standing to enforce the Mortgage after transferring its interest in the Mortgage to Wilmington Trust. (*See* Cross-Mot. to Vacate; Second Mot. to Vacate.) Plaintiffs raise the same claims here as to Nationstar's right to foreclose on the Property, arising from the same set of facts regarding the parties' rights and interests under the Note and Mortgage. (*See* Compl.) Plaintiffs may not simply repackage their already litigated claims as TILA claims. *See Green v. Kadilac Mortgage Bankers, Ltd.*, 936 F. Supp. 108, 114 (S.D.N.Y. 1996) (finding the plaintiff could not relitigate issues already decided in a foreclosure action by recasting his assertions as a section 1983 claim); *Almonte v. City of New York*, No. 15-CV-6843, 2018 WL 3998026, at *3 (S.D.N.Y. Aug. 21, 2018). Accordingly, Plaintiffs' claims against Nationstar are barred by claim preclusion.

### 2. Issue preclusion

"Issue preclusion, or collateral estoppel, . . . applies not to claims or to causes of action as a whole but rather to issues . . . ." *Proctor*, 715 F.3d at 414. "Under New York law, collateral

estoppel bars claims where (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Abdelal v. Kelly*, 726 F. App'x 8, 11 (2d Cir. 2018) (quoting *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995); *see also Postlewaite v. McGraw–Hill*, 333 F.3d 42, 48 (2d Cir. 2003) ("Under either federal law or New York State law, collateral estoppel, or issue preclusion, bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action.").

Collateral estoppel bars Plaintiffs' claims against both Defendants. First, Plaintiffs do not dispute that all issues raised in this proceeding were actually and necessarily decided in the Foreclosure Action. Throughout the state court proceedings, Plaintiffs repeatedly placed "in issue" Nationstar's standing to pursue the foreclosure and Wilmington Trust's rights and interests with respect to the Property which the state court specifically considered and rejected. (*See* Summary Judgement Order; Order Denying Second Mot. to Vacate.) In this action, Plaintiffs seek the rescission of the Note and Mortgage on the theory that Nationstar "is not the owner or holder and lacks standing to foreclose in their name." (*See* Compl. 23.) This action therefore raises the very same issues Plaintiffs raised in the Foreclosure Action.

As to the second prong, Plaintiffs do not dispute that they had a full and fair opportunity to litigate these issues in the state court proceeding. Counsel represented Plaintiffs in the Foreclosure Action and vigorously litigated Plaintiffs' claims in New York state court, a forum with extensive experience in foreclosure proceedings. In addition, Plaintiffs cannot point to any new evidence arising after the Foreclosure Action that may support a claim that they lacked a full and fair opportunity to litigate. *See Yeiser*, 535 F. Supp. 2d at 425 (observing the "forum of the

prior litigation," "the availability of new evidence," and "the extent of the litigation" are factors to consider in determining whether a party had a full and fair opportunity to litigate the issues).

Accordingly, the Court adopts the R&R as to Judge Scanlon's findings that claim preclusion and issue preclusion bar Plaintiffs' claims.

Having found that *Rooker–Feldman* doctrine deprives the Court of jurisdiction over Plaintiffs' claims, except Plaintiffs' claim for money damages under TILA, and — assuming the Court has jurisdiction — all of Plaintiffs' claims are precluded by claim preclusion or issue preclusion, the Court declines to review Judge Scanlon's recommendations that Plaintiffs' claims are also untimely.

  e. **Leave to amend**

Plaintiffs request in their Prayer for Relief that the Court "[g]rant Plaintiffs leave to add additional state law claims to Quiet Title on the [P]roperty if necessary." (Compl. 10.)

"When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *see also Caren v. Collins*, 696 F. App'x 19, 22 (2d Cir. 2017) ("[D]ismissal for insufficient pleadings are ordinarily with leave to replead" (quotation omitted)). "However, where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden*, 180 F.3d at 53; *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (holding that the district court did not err in dismissing the claims with prejudice "[i]n the absence of any indication that [the plaintiff] could — or would —

provide additional allegations that might lead to a different result").

A claim to quiet title would invite the Court to review the state-court decision in the Foreclosure Action regarding ownership of the Note and Mortgage. *See Barbarto v. U.S. Bank Nat'l Ass'n*, No. 14-CV-2233, 2016 WL 158588, at *3 (S.D.N.Y. Jan. 12, 2016) (holding that the plaintiff's quiet title claim would require the court to review the state proceedings and determine a foreclosure judgment was in error). Such a claim would be precluded for the reasons discussed above. Because all of Plaintiffs' claims are precluded, "amendment would . . . be[] futile" in this case. *See Pugh-Perry v. New York*, 402 F. App'x 588, 589 (2d Cir. 2010) (citing *Mortimer Off Shore Svs., Ltd. v. Fed. Republic of Germany*, 615 F.3d 97, 114 (2d Cir. 2010)); *see also Rountree v. US Bank NA*, No. 15-CV-9018, 2017 WL 31405, at *19 (S.D.N.Y. Jan. 3, 2017) (finding amendment would be futile where claims found precluded on motion to dismiss).

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motions, dismisses Plaintiffs' claims with prejudice, and deny their application to file an amended complaint. The Clerk of Court is directed to close this case.

SO ORDERED:

      s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: September 28, 2018
      Brooklyn, New York